TURNER v. DAVIDSON.

1. HUSBAND AND WIFE—FRAUDULENT CONVEYANCES—DEBTOR AND CREDITOR.

Where a husband has no creditors he may lawfully invest his wife with an interest in land purchased by him by taking title by the entireties.

2. SAME—ESTATES BY ENTIRETIES—DEBTOR AND CREDITOR.

Land held by husband and wife by the entireties may not be involuntarily sold or incumbered for the debts of either.

3. SAME.

An interest in two apartment houses taken in the name of the wife in exchange for an interest in an unfinished apartment house held by them by the entireties is not subject to the debts of the husband unless additional funds were used in connection with the entirety property to acquire said interest.

4. FRAUDULENT CONVEYANCES—EXEMPTIONS.

Creditors are not concerned with the disposition which a debtor makes of his exempt property.

On liability of estate by the entireties for husband's debts, see note in 36 L. R. A. (N. S.) 205.

5. WITNESSES—HUSBAND AND WIFE MAY NOT TESTIFY AGAINST
   EACH OTHER WHERE INTERESTS NOT ANTAGONISTIC — OPPOSITE
   PARTY.

   Where the interests of the husband and wife are not an-
     tagonistic in the matter being tried, neither may testify
     against the other when called for cross-examination under
     the statute (3 Comp. Laws 1915, §§ 12554, 12555).

Appeal from Wayne; Jayne (Ira W.), J.     Sub-
mitted April 29, 1924.     (Docket No. 105.)     Decided
June 2, 1924.

Bill by Harry O. Turner, trustee in bankruptcy of
Harry Davidson, against Harry Davidson and others
to reach certain property alleged to have been trans-
ferred in fraud of creditors.     From a decree dismiss-
ing the bill, plaintiff appeals.     Affirmed.

*Harry J. Lippman* (*Ralph W. Liddy* and *Ernest W.
Ver Wiebe,* of counsel), for plaintiff.

*Friedman, Meyers & Keys,* for defendants Davidson.

BIRD, J.     Plaintiff filed a bill to subject certain
property owned by Fanny Davidson to the payment
of building claims owing by her husband, Harry David-
son.     After the testimony was closed the trial court
denied the relief prayed and dismissed plaintiff's
bill.

It appears that in December, 1916, Harry Davidson
had $5,000 in cash which he had saved from his
merchandising and from real estate transactions.     He
invested $4,500 in a lot at the corner of Holcomb and
Lorman streets in the city of Detroit, and took the
title thereto in the name of himself and wife.     The
next year he arranged to construct thereon a 21-
apartment building.     He arranged to raise $45,000
by mortgage.     He made contracts in his own name
with contractors and material men.     He went for-

ward with the construction until he was indebted in the sum of between $17,000 and $18,000. The broker could not sell the bonds and he did not get the $45,000. He then attempted to secure other money by mortgage to finance the same to completion, but he did not succeed in this. He attempted to settle with his creditors by giving them a mortgage second to one given to a material man, but this did not go through. After much negotiation he traded the unfinished apartment building for an equity in two 10-apartment buildings, and took the title in the name of his wife, Fanny Davidson. The equity which they received was estimated at about $10,000. Subsequently she sold these upon contract and acquired interests in other real estate.

Plaintiff seeks to follow the fund which was realized from the unfinished apartment building, and which was exchanged for other property, and subject it to the payment of the debts of Harry Davidson, on the theory that the several deals were made in fraud of his creditors. When Harry Davidson acquired the Holcomb-Lorman lot in 1916, the title was placed in both himself and wife. So far as the record shows neither one of them at that time had any creditors. The wife had assisted him in his business operations prior to the date of taking title, and Davidson testified he thought she was entitled to an interest in the property. He had a lawful right to so invest her with an interest in the property if he had no creditors at the time. There was no showing that the title was so placed with a fraudulent purpose. There was nothing shown to indicate that he intended to contract debts on the strength of his being the sole owner of the property, nor that the entirety was created to defraud his future creditors. There was no excuse for anyone to be deceived as to the ownership of the property because the deed to himself and wife was at once placed of record. A simple investigation of

the records would have disclosed who owned the property. The title so residing in husband and wife, it could not be involuntarily sold or incumbered for the debts of either. *Vinton* v. *Beamer,* 55 Mich. 559; *Lewis' Appeal,* 85 Mich. 340 (24 Am. St. Rep. 94); *Dickey* v. *Converse,* 117 Mich. 449 (72 Am. St. Rep. 568); *Gorlick* v. *Shapero,* 222 Mich. 381.

The argument is made that when their interest in the unfinished apartment building was converted into a title interest in the wife to the two 10-apartment buildings, the protection which the law throws around such holdings of husband and wife was released, and that thereafter the property acquired was subject to the debts of the husband. We do not think this argument can be sustained unless additional funds were used in connection with the entirety property to acquire other property. *First State Bank of Milford* v. *Wallace,* 201 Mich. 673.

If the interest of Davidson and wife in the unfinished apartment building was beyond the reach of creditors of Harry Davidson, as it appears to have been, we cannot see how his creditors are now concerned with the property for which the exempt property was exchanged. The uniform rule of this court has been that creditors are not concerned with the disposition which a debtor makes of his exempt property. *Fischer* v. *McIntyre,* 66 Mich. 681; *Stewart* v. *Welton,* 32 Mich. 56; *Wilson* v. *Bartholomew,* 45 Mich. 41; *Anderson* v. *O'Dell,* 51 Mich. 492; *Buckley* v. *Wheeler,* 52 Mich. 1; *Emerson* v. *Bacon,* 58 Mich. 526; *Cullen* v. *Harris,* 111 Mich. 20 (66 Am. St. Rep. 380). We are of the opinion that the conclusion reached by the trial court on this phase of the case was the proper one.

Another question raised and argued in the briefs needs attention. Plaintiff, at the hearing, called both husband and wife for cross-examination under the statute. Each protested against the examination, and

counsel objected to it, but they were overruled, and plaintiff substantially made all the case he had from their testimony. Error is assigned thereon. It is quite evident that this assignment is well taken unless this case comes within one of the exceptions in the statute which forbids husband and wife testifying against each other. The statute provides that:

"A husband shall not be examined as a witness for or against his wife without her. consent; nor a wife for or against her husband without his consent, except in suits for divorce and in cases of prosecution for bigamy, and where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the refusal or neglect to furnish the wife or children with suitable support, and except in cases of desertion or abandonment, and cases arising under act one hundred thirty-six of the Public Acts of nineteen hundred five, relating to marriage, *and cases where the husband or wife shall be a party to the record in a suit, action, or proceeding, where the title to the separate property of the husband or wife so called or offered as a witness, or where the title to property derived from, through or under the husband or wife so called or offered as a witness, shall be the subject-matter in controversy or litigation in such suit, action or proceeding in opposition to the claim or interest of the other of said married persons, who is a party to the record in such suit, action or proceeding; and in all such cases, such husband or wife who makes such claim of title, or under or from whom such title is derived, shall be as competent to testify in relation to said separate property and the title thereto without the consent of said husband or wife, who is a party to the record in such suit, action or proceeding, as though such marriage relation did not exist."* \* \* \* 3 Comp. Laws 1915, § 12555.

That part of the section in italics is the only part which has any relevancy to the question involved here. This court has construed this portion of the statute with reference to a suit very much like the one we are considering. In that suit a bill was filed

in aid of execution charging that a deed from Cyrus L. to Caroline A. Moors, his wife, was fraudulent as to the creditors of Cyrus. Cyrus did not answer the bill and was defaulted. Caroline answered and defended. The complainant before he finished his case called Cyrus as a witness in his behalf, and his testimony was taken against the objection of his wife. In holding that the testimony was incompetent it was said, in part:

"We think the statute in this case prohibits the husband from being examined as a witness for or against his wife without her consent. It is conceded that the complainant introduced the husband as a witness to testify against his wife, and it is said in the brief of counsel that his testimony makes out a complete case for the complainant. It is therefore a case where, against his wife's consent, he is offered as a witness in a cause where both he and his wife are parties to the record as defendants, in which his wife's separate property is concerned, but in which his interest is identical with hers, and, therefore, there being no conflict between them in interest, he does not come within the exception in the statute. Had the contest been between the husband and wife concerning their separate property, or between the wife and some other party claiming through or under the husband, then the exception in the statute would permit either party to be a competent witness as against the other without the consent of either." *Blanchard* v. *Moors*, 85 Mich. 380.

The case of *Hubbell* v. *Grant*, 39 Mich. 641, is in accord with this holding. It is quite evident from this construction of the statute that if the interests of husband and wife are not antagonistic in the matter being tried, neither can testify against the other. This view is further increased by the case of *Hunt* v. *Eaton*, 55 Mich. 362, where the interests of husband and wife were in conflict, and it was there held that they could testify. For cases in other jurisdictions, whose statute is similar, see *DeFarges* v. *Ryland*, 87

Va. 404 (12 S. E. 805, 24 Am. St. Rep. 659); *Niland* v. *Kalish,* 37 Neb. 47 (55 N. W. 295); *Wolford* v. *Farnham,* 44 Minn. 159 (46 N. W. 295).

Our conclusion is that neither husband nor wife was a competent witness for the plaintiff in this case, and that neither should have been permitted to testify.

The decree of the trial court will be affirmed, with costs to defendants.

CLARK, C. J., and MCDONALD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.